cal_____

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| HENRY ROBERT BRATTON, | ) | Civil No.06cv2771 LAB (AJB) |
| | ) | |
| Petitioner, | ) | Report and Recommendation |
| v. | ) | Denying Petition for Writ of Habeas |
| | ) | Corpus Under 28 U.S.C. § 2254 |
| ROBERT HERNANDEZ, Warden, | ) | [Doc. Nos. 1 and 11] |
| | ) | |
| Respondent. | ) | |
| | ) | |

Petitioner, Henry Bratton, a state prisoner proceeding pro se, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 on May 8, 2006 in the Eastern District of California, which was transferred to this district on December 26, 2006. (Docket No. 1.) Petitioner is not challenging his conviction or sentence, but rather the Board of Parole Terms ("BPT") decision finding him to be unsuitable for parole. In his first amended Petition, Petitioner contends: 1) the Board erred in failing to consider all of the psychological reports in determining his suitability for parole (FAP p. 6b); 2) the Board relied on inaccurate facts following the 1992 rescission of parole to deny him parole in the 2003 hearing (FAP, pp. 6b-c); 3) the Governor and Board members appointed subsequent to the 1992 rescission of parole are without authority to reverse a prior Board's decision finding Petitioner to be suitable for parole (FAP, pp. 6d-e); 4) the Board's practice of under inclusion deprives Petitioner of due process (FAP, p. 6e); 5) the Board's denial of parole breached the contract (notice and conditions of parole) Petitioner signed in 1991 (FAP, p. 6f); 6) the Board improperly conducted his parole suitability

hearing utilizing the guidelines under the Determinate Sentencing Law (FAP, pp.6f-g); and 7) Petitioner should be immediately released pursuant to his request for judicial notice of the Ninth Circuit's decision in *McQuillion v. Duncan*, No. 03-55702 (FAP, pp. 6h-k). Respondent has filed an Answer and Petitioner has filed a Traverse. For the following reasons, the Court finds that Petitioner is not entitled to habeas relief as to any claim presented in the Petition, and recommends the Petition be **DENIED**.

### *Background*

#### *I.     Underlying Facts*

On September 11, 1974, Petitioner entered the apartment of the victim, Teresa Stout, who was deaf and mute, and murdered her by shooting her in the face four times and then stabbing her twenty-eight times. Petitioner broke the victim's piggy bank and took its contents, which totaled $18.25 in change. Petitioner admitted to his mother that he murdered Teresa Stout, but claimed he was under the influence of drugs and that "somebody else's mind" told him to commit the crimes. (Lodg. 2 at 1-5.)

This was Petitioner's first and only violent crime, he had no prior criminal record.  Petitioner was eighteen years old when he committed this crime.  Petitioner was convicted of murder in the first degree, robbery in the first degree, burglary in the first degree with use of a firearm, and sentenced to 7 years to life[1] and incarcerated on April 28, 1975.

#### *II.    State Proceedings*

After serving a minimum term of confinement, Petitioner became eligible for parole consideration. Petitioner's first parole hearing was in 1980 and he had subsequent parole hearings every year from 1981 until 1987, when after thirteen (13) years of incarceration, Petitioner was granted parole at his seventh Parole Consideration Hearing on November 19, 1987. (Lodg. 3, p. 2.)  However, on February 14, 1992, the Board rescinded Petitioner's parole. (Lodg.3, p. 3.)  In 1993, the first parole consideration hearing following the recision of his parole, was a two year denial.  The 1996 and 1999 parole consideration hearings both resulted in three year denials of parole.

On September 2, 2003, petitioner's twelfth parole consideration hearing was held. Petitioner was found to be unsuitable for parole and received a one-year denial. (Lodg. 4.) Petitioner filed an adminis-

---

[1] Prior to 1978, the statutory sentencing for first degree murder was seven years to life, however, in 1978 the statutory sentence was changed to 25 years to life.

trative appeal of the Board's decision on January 12, 2004. (Lodg. 5.) The appeal was denied at the final level on May 10, 2004. . (Lodg. 5.) Petitioner challenged the Board's denial in a petition for writ of habeas corpus filed in Santa Clara County on July 6, 2004. (Lodg. 6.) The superior court denied the petition in an opinion filed May 4, 2005. (Lodg. 7.) Petitioner filed a petition in the California Court of Appeal, Sixth Appellate District. The appellate court denied the petition on August 4, 2005. (Lodg. 8.) Petitioner filed a petition in the California Supreme Court, challenging similar grounds related to the 2003 parole consideration hearing, and also a tangential issue related to the 1992 rescission of parole. (Lodg. 10.) The court denied the petition in an order dated April 12, 2006, citing *In re Rosenkrantz*, 29 Cal.4th 616 (2002); *In re Dannenberg*, 34 Cal.4th 1061 (2005); and *In re Fain*, 65 Cal. App.3d 376 (1976). (Lodg. 11.)

### *III. Federal Proceedings*

Petitioner filed a Petition in the United States District Court, Eastern District, on May 8, 2006. That court dismissed the Petition without prejudice to allow Petitioner to more clearly identify the Board hearing which he challenged because although he attached a copy of the 2003 hearing transcript to the Petition, the Board had conducted another consideration hearing in 2005. On July 7, 2006 Petitioner filed a first amended Petition (FAP), which added claim 7. After Petitioner filed the first amended Petition, the matter was transferred to the United States District Court, Southern District.

## *Discussion*

Petitioner contends: 1) the Board erred in failing to consider all of the psychological reports in determining his suitability for parole (FAP p. 6b); 2) the Board relied on inaccurate facts following the 1992 rescission of parole to deny him parole in the 2003 hearing (FAP, pp. 6b-c); 3) the Governor and Board members appointed subsequent to the 1992 rescission of parole are without authority to reverse a prior Board's decision finding Petitioner to be suitable for parole (FAP, pp. 6d-e); 4) the Board's practice of under inclusion deprives Petitioner of due process (FAP, p. 6e); 5) the Board's denial of parole breached the contract (notice and conditions of parole) Petitioner signed in 1991 (FAP, p. 6f); 6) the Board improperly conducted his parole suitability hearing utilizing the guidelines under the Determinate Sentencing Law (FAP, pp.6f-g); and 7) Petitioner should be immediately released pursuant

to his request for judicial notice of the Ninth Circuit's decision in *McQuillion v. Duncan*, No. 03-55702 (FAP, pp. 6h-k).

## I. Standard of Review

Title 28, United States Code, § 2254(a), sets forth the following scope of review:

> The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States. 28 U.S.C.A. § 2254(a) (West 2006) (emphasis added).

Under 28 U.S.C. § 2254(d):

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. 28 U.S.C.A. § 2254(d) (West 2006).

A state court's decision may be "contrary to" clearly established Supreme Court precedent: (1) "if the state court applies a rule that contradicts the governing law set forth in [the Court's] cases" or (2) "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the] Court and nevertheless arrives at a result different from [the Court's] precedent." *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). A state court decision may involve an "unreasonable application" of clearly established federal law, "if the state court identifies the correct governing legal rule from this Court's cases but unreasonably applies it to the facts of the particular state prisoner's case." *Id.* at 407. An unreasonable application may also be found, "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Id.*

"[A] federal habeas court may not issue the writ simply because the court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law

erroneously or incorrectly. . . . Rather, that application must be objectively unreasonable." *Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2003) (internal quotation marks and citations omitted). Clearly established federal law "refers to the holdings, as opposed to the dicta, of [the United States Supreme] Court's decisions." *Williams*, 529 U.S. at 412.

Habeas relief is also available if the state court's adjudication of a claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in state court." 28 U.S.C.A. § 2254(d)(2) (West 2006). In order to satisfy this provision, Petitioner must demonstrate that the factual findings upon which the state court's adjudication of his claims rest, assuming they rest on a factual determination, are objectively unreasonable. *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

### II.   *Petitioner's Due Process Claims*

Claims one, two, four and seven of the Petition challenge the sufficiency of the evidence the BPT relied upon in finding the Petitioner unsuitable for parole. Specifically, Petitioner contends that the Board erred in failing to consider all of the psychological reports and relied on inaccurate facts following the 1992 rescission of parole to deny Petitioner parole in the 2003 hearing. Petitioner also contends that every parole hearing since 1992 has relied on the same grounds as set forth in the 1992 hearing that rescinded Petitioner's parole. Furthermore, Petitioner argues that the Board's practice of under inclusion deprives Petitioner of due process.

Alternatively, Respondent argues that the record shows that the Petitioner was afforded all of the process required under California law, which is more than what is required under federal law in *Greenholtz*. *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1 (1979); *See* Cal. Penal Code §§ 3041, 3041.5. Petitioner was provided with advance notice of his parole consideration hearing, an opportunity to submit materials for the Board's consideration, an opportunity to be heard by the Board, and both oral and written statements of reasons he was denied parole. Petitioner was also represented by counsel. Respondent contends, based upon the foregoing, that Petitioner received all the process due under *Greenholtz*, and therefore the state court decision upholding the denial of parole was neither contrary to, nor an unreasonable application of clearly established federal law.

"There is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence." *Greenholtz v. Inmates of Nebraska Penal and Corr. Complex*, 442 U.S. 1, 7 (1979). Yet a State "create[s] a liberty interest protected by due process guarantees" when its parole scheme employs "statutory language [that] itself creates a protectible expectation of parole." *Id.* at 11-12.

California Penal Code section 3041[2] vests all California prisoners whose sentences provide for the possibility of parole with a constitutionally protected liberty interest in the receipt of a parole release date, a liberty interest that is protected by the procedural safeguards of the Due Process Clause.[3] A parole board's decision deprives a prisoner of due process with respect to this interest if the board's decision is not supported by "some evidence in the record,"[4] or is "otherwise arbitrary,"[5] Whether a state parole board's suitability determination was supported by "some evidence" in a habeas case, is determined by the statutes and regulations governing parole suitability determinations in the relevant state. *See Biggs*, 334 F.3d at 915. As such, the Court must look to California law to determine the findings that are necessary to deem a prisoner unsuitable for parole, and then must review the record in order to determine whether the state court decision holding that these findings were supported by "some evidence" constituted an unreasonable application of the "some evidence" principle articulated in *Hill*, 472 U.S. at 454.

In California, the Penal Code provides that "prior to [an] inmate's minimum eligible parole release date a panel of two or more commissioners or deputy commissioners shall again meet with the

---

[2] Specifically, under California Penal Code section 3041(a), "one year before the prisoner's minimum eligible parole date, a Board panel shall meet with the inmate, 'shall normally set a parole release date,' and shall do so 'in a manner that will provide uniform terms for offenses of similar gravity and magnitude in respect to their threat to the public.' " *Dannenberg*, 34 Cal.4th at 1078, 23 Cal. Rptr.3d 417, 104 P.3d 783. However, a "determination of an individual inmate's suitability for parole under section 3041, subdivision (b) must precede any effort to set a parole release date under the uniform-term principles of section 3041, subdivision (a)." *Id.* at 1079-80, 23 Cal. Rptr.3d 417, 104 P.3d 783.

[3] *Sass*, 461 F.3d at 1128; *Biggs*, 334 F.3d at 914; *McQuillion v. Duncan*, 306 F.3d 895, 903 (9th Cir.2002); *see also Bd. of Pardons v. Allen*, 482 U.S. 369 (1987) (*quoting Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 12 (1979)).

[4] *Sass*, 461 F.3d at 1128-29 (*citing Superintendent v. Hill*, 472 U.S. 445, 457 (1985)); *see also Biggs*, 334 F.3d at 915 (*citing McQuillion*, 306 F.3d at 904).

[5] *Hill*, 472 U.S. at 457.

inmate and shall normally set a parole release date." Cal. Penal Code § 3041(a). Citing this mandatory statutory language, the Ninth Circuit has repeatedly held that "California's parole scheme gives rise to a cognizable liberty interest in release on parole." *McQuillion v. Duncan*, 306 F.3d 895, 903 (9th Cir.2002); *see also Irons v. Carey*, 479 F.3d 658, 662 (9th Cir.2007); *Sass v. Cal. Bd. of Prison Terms*, 461 F.3d 1123, 1128 (9th Cir.2006); *Biggs v. Terhune*, 334 F.3d 910, 914 (9th Cir.2003). Thus, the BPT's decision to deny parole cannot stand unless it is supported by "some evidence," a "minimal standard" designed to ensure that " 'the record is not so devoid of evidence that the findings of the disciplinary board were without support or otherwise arbitrary.' " *Sass*, 461 F.3d at 1128-29 (quoting *Superintendent v. Hill*, 472 U.S. 445, 457 (1985)). The "some evidence" standard is "clearly established" Supreme Court precedent and is therefore applicable under AEDPA to decisions rendered by the BPT. *Id.* at 1129.

In the instant case, the California Supreme Court denied the petition with citations to *In re Rosenkrantz*, 29 Cal. 4th 616 (2002), *In re Dannenberg*, 34 Cal. 4th 1061 (2005), and *In re Fain*, 65 Cal. App. 3d 376 (1976), thus, implicitly finding that some evidence supported the Board's decision. (Lodg. 11.) The state appellate court summarily denied the petition. (Lodg. 9.) The Santa Clara County Superior Court, however, relied on *Dannenberg*,[6] and other state court decisions and found that because Petitioner's egregious acts in the commitment offense went beyond the minimum necessary to sustain the conviction, the Board's finding of unsuitability, based on the commitment offense, was supported by the record. (Lodg. 6.) *Irons v. Carey*, 505 F.3d 846, 850-51 (9th Cir. 2007).

---

[6] In *Dannenberg* the California Supreme Court addressed a prisoner's challenge to the parole Board's decision to deem him unsuitable for parole on the basis of his commitment offense in spite of the fact that virtually all other relevant factors militated in favor of a finding of suitability. *Dannenberg* had been sentenced to 15 years to life in prison for the second degree murder of his wife in 1985. After a domestic argument, *Dannenberg* struck multiple blows to his wife's head with a pipe wrench and then pushed her into a tub of water in which she drowned. 34 Cal.4th at 1095. At his 1999 parole hearing the Board concluded that *Dannenberg* presented a danger to society if released and was thus unsuitable for parole because the second degree murder he committed was " 'especially callous and cruel,' showed 'an exceptionally callous disregard for human suffering,' and was disproportionate to the 'trivial' provocation" for the offense. 34 Cal.4th at 1095. The California Supreme Court held that the Board's decision to deem *Dannenberg* unsuitable on this basis was supported by "some evidence" because the Board "pointed to circumstances of the inmate's offense suggesting viciousness beyond the minimum elements of second degree murder.... Accordingly, [ ] the Board could use the murder committed by *Dannenberg* as a basis to find him unsuitable, for reasons of public safety, to receive a firm parole released date." *Id.*

Under California law, prisoners serving an indeterminate sentence for first degree murder "may serve up to life in prison, but [ ] become eligible for parole consideration after serving minimum terms of confinement." *Dannenberg*, 34 Cal.4th at 1078. Although the Board must "normally set a parole release date" before the minimum term has been served, id., an inmate " 'shall be found unsuitable for parole and denied parole if, in the judgment of the [Board,] the prisoner will pose an unreasonable risk of danger to society if released from prison,' " *Id.* at 1080 (*quoting* Cal. Code Regs., tit. 15 § 2402(a)).

The Board must determine whether a prisoner is presently too dangerous to be deemed suitable for parole based on the "circumstances tending to show unsuitability" and the "circumstances tending to show suitability" set forth in Cal. Code. Regs., tit. 15 § 2402(c)-(d).[7] A prisoner's commitment offense may constitute a circumstance tending to show that a prisoner is presently too dangerous to be found suitable for parole, but the denial of parole may be predicated on a prisoner's commitment offense only where the Board can "point to factors beyond the minimum elements of the crime for which the inmate was committed" that demonstrate the inmate will, at the time of the suitability hearing, present a danger to society if released. *Dannenberg*, 34 Cal.4th at 1071. Factors beyond the minimum elements of the crime include, inter alia, that "[t]he offense was carried out in a dispassionate and calculated manner," that "[t]he offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering," and that "[t]he motive for the crime is inexplicable or very trivial in relation to the offense." Cal. Code. Regs., tit. 15 § 2402(c)(1)(B), (D)-(E).

In Denying Petitioner parole in 2003, the BPT cited as ground for their denial: 1) a psychological evaluation of Petitioner on January 30, 2002, which stated a diagnostic impression of antisocial personality disorder and expressed concerns regarding his violence towards women, likelihood of drug relapse and his family origin issues and cited these factors as support for Petitioner's unsuitability for

---

[7] Under these regulations, the circumstances tending to show that a prisoner is unsuitable include: (1) the commitment offense, where the offense was committed in "an especially heinous, atrocious or cruel manner"; (2) the prisoner's previous record of violence; (3) "a history of unstable or tumultuous relationships with others"; (4) commission of "sadistic sexual offenses"; (5) "a lengthy history of severe mental problems related to the offense"; and (6) "serious misconduct in prison or jail." Cal. Code. Regs., tit. 15 § 2402(c). Circumstances tending to show that a prisoner is suitable for parole include: (1) the prisoner has no juvenile record; (2) the prisoner has experienced reasonably stable relationships with others; (3) the prisoner has shown remorse; ... (6) the prisoner lacks any significant history of violent crime; ... (8) the prisoner "has made realistic plans for release or has developed marketable skills that can be put to use upon release"; (9) "[i]nstitutional activities indicate an enhanced ability to function within the law upon release." Cal. Code. Regs., tit. 15 § 2402(d).

release 2) the exceptionally violent and brutal nature of the commitment offense; Petitioner's assault on a peace officer while he was in custody of the Sheriff's Department; minor criminality consisting of a juvenile arrest in 1974 for petty theft that resulted in twenty months probation, which Petitioner violated when he committed the instant offense.

Given the findings of the psychological evaluation of the Petitioner on January 30, 2002, and the dispassionate and vicious nature of his crime, this Court cannot say that there was not "some evidence" to support the Board's determination that Petitioner was unsuitable for parole under California law. Specifically, given that his commitment offense, standing alone, is a sufficient basis for deeming a petitioner unsuitable.  In the instant case, there is some evidence to support a finding that "the offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering" and the "motive for the crime is inexplicable or very trivial in relation to the offense."[8] As such, the Court finds that the state court reasonably applied *Hill's* "some evidence" principle in upholding the Board's 2003 denial for parole for Petitioner. *Irons v. Carey*, 505 F.3d 846 (9th Cir. 2007).

Petitioner has failed to demonstrate that the state court's denial of these claims was contrary to, or an unreasonable application of, clearly establish federal law, as determined by the United States Supreme Court or was based on an unreasonable determination of the state court evidence.  As such, this Court recommends that claims one, two, four and seven of the Petition be **DENIED**.

### III. *Petitioner's Plea Agreement Claims*

Petitioner contends, in claim five, that he signed a contract with the state (the terms and conditions of parole) at or near the time he was found suitable for parole in 1991. Specifically, Petitioner alleges that by signing his parole plan's "Notice and Conditions of Parole", that he waived certain rights and privileges. Petitioner claims that the BPT's decision to deny parole is in violation of the terms of this agreement, because Petitioner fulfilled his obligations.  (FAP, p. 6f.)

Respondent contends that Petitioner's claim is time-barred because he was aware of the factual predicate for the theory underlying his claims for habeas relief more than one year before he filed the petition. See 28 U.S.C. § 2244(d)(1) (establishing a one-year statute of limitations on federal habeas petitions). In the instant case, the factual predicate of Petitioner's claim arose in 1992 when his parole

---

[8] Cal. Code Regs., tit. 15 § 2402(c)(1)(D)-(E).

was rescinded.  Respondent argues therefore, that the last day for Petitioner to file a federal habeas petition as to this claim was on April 24, 1997, and Petitioner did not file his first petition in state court until July 6, 2004, seven years later.

Respondent's argument is unpersuasive. Here, Plaintiff challenges the BPT's decision denying him parole, which did not become effective until September 2, 2003.  Petitioner thereafter filed and exhausted his administrative appeals and then challenged the Board's final decision in habeas petitions in state court, until his state habeas petition was denied by the California Supreme Court on April 12, 2006.  A dismissal of a habeas petition by the California Supreme Court is not final for the purposes of § 2244(d)(2) until 30 days after the denial is filed. *Lott v. Mueller*, 304 F.3d 918, 921 (9th Cir.2002) (*citing Bunney v. Mitchell*, 262 F.3d 973, 974 (9th Cir.2001)).  Petitioner filed the instant Petition on May 8, 2006.

Even though Plaintiff might have challenged previous denials of parole on the same theory he presents here, the factual predicate for the particular claim actually presented in this habeas petition did not exist until the BPT issued its ruling. *See Redd v. McGrath*, 343 F.2d 1077, 1084 (9th Cir.2003) (concluding that the factual predicate for a habeas challenge exists once the BPT denies parole). For this reason, the Court holds that Petitioner's claim is timely. *See Nino v. Galaza*, 183 F.3d 1003, 1005-06 (9th Cir.1999) (noting that the limitations period under AEDPA "is tolled from the time the first state habeas petition is filed until the California Supreme Court rejects the petitioner's final collateral challenge.").

The record, however, provides scant support for Petitioner's claim. Simply put, there is no evidence in the record to suggest that the agreement cited by Petitioner incorporated such a promise. The Petitioner does not provide the terms of the parole plan's "Notice and Conditions of Parole", nor does he specify what rights and privileges he allegedly waived or what obligations he fulfilled.   In light of this record, the state courts refusal to find that there was a violation of the agreement in the absence of evidence of a promise or representation regarding parole eligibility at the time of the agreement. *See Santobello v. New York*, 404 U.S. 257, 262 (1971) ("[W]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled.").

As such, the California court's decision was based neither on an unreasonable determination of the facts nor on an unreasonable application of Supreme Court precedent. See 28 U.S.C. § 2254(d). The record in this case stands in stark contrast to those cases in which courts have found that the denial of parole constitutes a breach of the petitioner's plea agreement. *See, e.g., Buckley v. Terhune*, 441 F.3d 688, 691-98 (9th Cir.2006) (construing a written plea agreement in defendant's favor where one paragraph stated that he would serve a "maximum of fifteen years" while another paragraph stated "fifteen to life"); *Brown v. Poole*, 337 F.3d 1155, 1158-62 (9th Cir.2003) (finding that the prosecutor had breached a promise, made on the record, that the defendant would "get out in half the time" if he "behave[d] [himself] at the state prison"). Here, there is no objective evidence from which a Court could conclude that Petitioner's agreement entailed a guaranteed release and most notably, the agreement at issue in this case is not a plea agreement, but rather a sub-portion of a parole plan.

As such, the Petitioner has failed to demonstrate that the state court's denial of this claim was contrary to, or an unreasonable application of, clearly establish federal law, as determined by the United States Supreme Court or was based on an unreasonable determination of the state court evidence. As such, this Court recommends that claim five of the Petition be **DENIED**.

### *IV.    Petitioner's Challenges to the Interpretation and Application of State Laws*

In claims three and six of the Petition, the Petitioner challenges the BPT's and Governor's authority to review and reverse a prior Governor's determination of suitability for parole and the BPT's failure to specify whether they are considering Petitioner' suitability for parole under Determinant or Indeterminate Sentencing laws. Respondent argues that these claims fail to present a federal question because they challenge the interpretation and application of state laws that govern the review powers of the Board and Governor.

In conducting habeas review, a federal court is limited to deciding whether a state's action violated the Constitution, laws or treaties of the United States. *Estelle v. McGuire*, 502 U.S. 62, 68 (1991); *see* 28 U.S.C. § 2254(a). Habeas relief is not available for an alleged error in the interpretation

or application of state law.[9] A federal district court does "not sit as a 'super' state supreme court" with general supervisory authority over the proper application of state law.[10] Instead, federal courts may only intervene in state judicial proceedings to correct errors of federal constitutional magnitude. *Oxborrow v. Eikenberry*, 877 F.2d 1395, 1400 (9th Cir. 1989) (stating that federal courts are not concerned with errors of state law unless they rise to level of constitutional violation). A federal habeas corpus petition must therefore allege a deprivation of one or more federal rights to present a cognizable claim pursuant to § 2254.

As such, the Petitioner has failed to demonstrate that the state court's denial of this claim was contrary to, or an unreasonable application of, clearly establish federal law, as determined by the United States Supreme Court or was based on an unreasonable determination of the state court evidence. As such, this Court recommends that claim six of the Petition be **DENIED**.

### V.     Petitioner's Request For Judicial Notice

The Petitioner contends that he should be immediately released pursuant to his request for judicial notice of the Ninth Circuit's decision in *McQuillion v. Duncan*, No. 03-55702 (FAP, pp. 6h-k). Pursuant to Rule 201 , a court may take judicial notice of adjudicative facts "not subject to reasonable dispute." Fed. R. Evid. 201(b). Facts are indisputable, and thus subject to judicial notice, only if they are either "generally known" under Rule 201(b)(1) or "capable of accurate and ready determination by resort to sources whose accuracy cannot be reasonably questioned" under Rule 201(b)(2). Taking judicial notice of findings of fact from another case exceeds the limits of Rule 201 . *See M/V Am. Queen v. San Diego Marine Constr. Corp.*, 708 F.2d 1483, 1491 (9th Cir.1983) (stating general rule that "a

---

[9] *Estelle v. McGuire*, 502 U.S. at 67-68; *Jammal v. Van de Kamp*, 926 F.2d 918, 919 (9th Cir. 1991); *see also Dugger v. Adams*, 489 U.S. 401, 409 (1989)("the availability of a claim under state law does not of itself establish that a claim was available under the United States Constitution").

[10] *Smith v. McCotter*, 786 F.2d 697, 700 (5th Cir. 1986); *see Lewis v. Jeffers*, 497 U.S. 764, 780 (1990)(federal habeas court must respect state court's application of its law); *Jackson v. Ylst*, 921 F.2d 882, 885 (9th Cir. 1990)(federal court has no authority to review state's application of state law).

court may not take judicial notice of proceedings or records in another cause so as to supply, without formal introduction of evidence, facts essential to support a contention in a cause then before it").[11]

As such, Petitioner's documents will be lodged with the Court and become part of the record in this case, however, Petitioner's Motion Requesting the Court take judicial notice of the exhibits filed is denied as judicial notice of these exhibits is not appropriate for the reasons set forth above.

### *Conclusion*

For all of the foregoing reasons, IT IS HEREBY RECOMMENDED that the Court issue an Order: (1) approving and adopting this Report and Recommendation; and (2) directing that judgement be entered denying the Petition.

This Report and Recommendation will be submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(1) (1988). Any written objections to this Report and Recommendation must be filed with the Court and a copy served on all parties ***on or before January 2, 2007***.  The document should be captioned "Objections to Report and Recommendation." Any reply to the objections shall be served and filed ***on or before January 16, 2008***.  The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of this Court's order. *See Turner v. Duncan,* 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

DATED:  December 18, 2007

_____
Hon. Anthony J. Battaglia
U.S. Magistrate Judge
United States District Court

---

[11] Factual findings in one case ordinarily are not admissible for their truth in another case through judicial notice. See 21 Charles Alan Wright & Kenneth A. Graham, Jr., Federal Practice & Procedure § 5106 (Supp.2001) (stating "courts should distinguish between taking judicial notice of the truth of some extrajudicial fact recited in a court record and the use of those facts for some purpose that does not depend on the truth of the facts recited"). In agreement with M/V Am. Queen, other circuits have held that a court may not take judicial notice of findings of fact from a different case for their truth. *Taylor v. Charter Med. Corp.*, 162 F.3d 827, 830 (5th Cir.1998); *Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc.*, 146 F.3d 66, 70 (2d Cir.1998); *Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1082-83 & n. 6 (7th Cir.1997); *Orix Credit Alliance, Inc. v. Delta Res., Inc.* (In re Delta Res., Inc.), 54 F.3d 722, 726 (11th Cir.1995); *United States v. Jones*, 29 F.3d 1549, 1553 (11th Cir.1994); *Holloway v. Lockhart*, 813 F.2d 874, 878-79 (8th Cir.1987).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28